Tyler B. Ayres, Bar No. 9200
12339 S. 800 E. Ste. 101
Draper UT 84020
(801) 255-5555 Phone
(801) 255-5588 Fax
Tyler@AyresLawFirm.com

**THIRD DISTRICT SALT LAKE DEPARTMENT**
**SALT LAKE COUNTY, STATE OF UTAH**
450 S. State St. Salt Lake City, UT  84114
Phone 238-7300 Fax 238-7074

| | |
|---|---|
| RYAN PYLE,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES WOODS, KELVYN CULLIMORE, COTTONWOOD HEIGHTS,  and JOHN AND JANE DOES 1-10<br><br>Defendants. | **COMPLAINT AND JURY DEMAND**<br><br><br><br>Case No:<br><br><br>Judge: |

The Plaintiff RYAN PYLE ("Plaintiff"), by and through his attorney Tyler Ayres and

AYRES LAW FIRM LLP alleges as follows, upon information and belief:

**INTRODUCTION**

1.      This is an action for injunctive and declaratory relief and statutory attorney's fees brought pursuant to 28 USC § 1983  and the Utah State Constitution based upon the defendant's policies and practices in connection with the unregulated distribution of internal electronic data pertaining to the private and confidential information contained with plaintiff's medical records obtained in accordance with Utah Code § 58-37f-101. Additionally, the Plaintiff asserts a claim against the Defendants under the Fair Credit Reporting Act, 15 U.S.C. § 1681.

2.      In practice, the Prescription Drug Database that was created in 1995 by the Utah State Legislature collects and maintains information regarding every prescription medication and corresponding medical condition in the State of Utah when medications are necessary for treatment. The same Database has also been utilized by local governments like Cottonwood Heights for employment purposes.

3.      This information is made available to law enforcement through access to the database pursuant to Utah Code § 58-37f-301.

4.      In order to obtain access to the database law enforcement personnel are required to either (1) attain post certification and be hired by a Federal, State, or local law enforcement agency or (2) be authorized by a Federal, State, or local law enforcement agency as a prosecuting attorney or investigator.

5.      No other certification, training, or assignment is necessary for law enforcement personnel to obtain access to the database.

6.      Once law enforcement has obtained a password for the database there is no independent oversight of how law enforcement uses the database.

7. The unjustified and unregulated collection and subsequent distribution of private medical electronic data to law enforcement is an unjustified risk of the violation of a patient/ employees right to privacy and thereby deprives the plaintiff, and other patients similarly situated, of liberty and privacy without due process of law.

8. Specifically, the unfettered access to private and confidential medical records regarding various physical, mental, and emotional medical conditions that individuals are dealing with deprives them of the following protected rights:

   i. Their constitutionally protected right to privacy with regard to their medical information.
   ii. The right of protection against self incrimination from the unauthorized use of their private medical records obtained by medical personnel.

9. The distribution of such electronic data also deprives the plaintiff and others similarly situated of the following property interests:

   i. The value of the claims and defenses that they have the right to assert in employment and legal matters regarding allegations of stemming from the unjustified invasion of their privacy rights insofar as asserting such claims requires that they first risk becoming accused of crimes and or having their employment status impacted.
   ii. The value of their employment and privacy, insofar as their rights as employees and their interests as patients can only be asserted at the price of declining proper medical treatment in order to protect their rights associated with their employment as well as their right to privacy.

10. The electronic data is distributed by the Utah Department of Commerce through the prescription drug database to law enforcement without affording the plaintiff and other patients/ employees who are subjected to this intrusion of privacy any opportunity whatsoever to have their names stricken from the list or the information protected as

private. This results in the deprivation of their liberty and property without even the slightest semblance of due process.

11.     Utah Code § 58-37f-301 allows unregulated access of any persons private medical history without reasonable suspicion of criminal activity or any other articulable standard for law enforcements direction. In practice, there is zero oversight of how the database is being used by law enforcement and as such, law enforcement is able to use it to circumvent privacy rights whenever they feel like it or they are asked to look it up.

12.     In addition, the distribution of such data to law enforcement forces patients, like the plaintiff, to choose between (a) visiting the doctor and seeking medical attention and prescription medications or (b) abandoning any privacy interest they have regarding medical conditions and the corresponding treatments.

13.     Forcing patients to abandon medical care to avoid the irreparable harm caused by an invasion of privacy deprives them of liberty without due process.

14.     As set forth herein, the unregulated distribution of such electronic data to law enforcement will cause the plaintiff, who is facing the imminent threat of a medical condition and or emergency medical conditions to forego their privacy interests.

15.     The electronic data provided to law enforcement through it's unfettered access to the database includes the name of the patient, the date of birth of the patient, the address of the patient, the name of the treating physician, the approximate time the patient met with the physician/ prescriber, the name of the prescription medication, and the dosage for which the patient is prescribed.

16.     With this information any reasonable person with access to the internet is able to deduce not only the specific symptoms, but potentially the underlying condition manifested by those symptoms.  Such policy and practice constitutes a violation of Plaintiff's due process rights under the Federal and Utah State Constitutions as well as under the Health Insurance Portability and Accountability Act (HIPAA)..

17.     The information that is protected by HIPAA is protected as private and confidential regardless of who is using the information and or disseminating the same information.

18.     Distribution to law enforcement of the electronic data is not subject to any independent standards or regulatory compliance, resulting in an illegal use of the data by rogue officers and employers in violation of the Fair Credit Reporting Act.

19.     The distribution of such electronic data is antithetical to the Utah Department of Commerce's overriding obligation to create and maintain the confidentiality and privacy of all patients information.

20.     The defendants' policy and practice, described herein, is ***ultra vires*** of the defendants' constitutional and statutory mandate and results in a further denial of due process under the Federal and Utah State Constitutions as well as Federal and State statutory regulations.

21.     The distribution to and receipt of such electronic data was used by Cottonwood Heights for employment related decisions.

22.     On information and belief Cottonwood Heights and James Woods engaged in such practices in furtherance of a policy of "administrative convenience" so that law enforcement is able to circumvent a patient/ employee's right to privacy and due process

that would be protected if a warrant were sought, probable cause were required, reasonable suspicion was required, or if there were minimal oversight regarding who was able to access the private information that is collected and maintained within this database.

23. There is no legitimate government interest in the unfettered access to this private information and unregulated access should not be tolerated in the name of illicit drug use prevention, the broader prevention of criminal activity, or for employment decisions.

24. Unless the defendants are enjoined and restrained from engaging in such practices, the plaintiff, and hundreds of thousands of other individuals threatened with the invasion of privacy by law enforcement, will suffer immediate and irreparable harm because their private information is available for any law enforcement personnel who elects to obtain a password from the Utah Department of Commerce Prescription drug database.

## **JURISDICTION AND VENUE**

25. This action arises under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983 as well as the Utah State Constitution Article 1 §§ 1, 2, 3, 7, 14, 15, 22, 25, and 27.

26. This Court has jurisdiction to hear and adjudicate injunctive and declaratory judgment claims brought under 42 U.S. C. § 1983 as well as to hear and adjudicate claims for injunctive and declaratory relief for violation of the Constitution of the State of Utah pursuant to U.C.A. § 78A-5-102.

27.     This Court has jurisdiction to hear and adjudicate the FCRA claim under U.C.A. § 78A-5-102.

28.     Venue is appropriate in this judicial district under Utah Code Subsection 78B-3-307(1)(a) as Salt Lake County is the location where the cause of action arose as well as the location where the defendants maintain their offices.

## PARTIES

29.     Plaintiff RYAN PYLE is a citizen of the United States and a resident of the County, of Salt Lake, City of and State of Utah.

30.     Plaintiff was at all relevant times to this matter employed as a Fire Fighter with Unified Fire Department in Salt Lake County.

31.     Defendant JAMES WOODS is or was a detective with the Cottonwood Heights Police Department at all relevant times herein.

32.     Defendant Woods is sued in his official capacity for prospective relief, and as an indispensable party, whose presence is necessary to provide full and complete relief to the plaintiff.

33.     Kelvyn Cullimore is the Mayor of Cottonwood Heights and has been the Mayor of Cottonwood Heights for all times relevant to this action.

34.     As the Mayor, Cullimore is responsible to direct the actions of city employees including the Chief of Police and Detective James Woods.

35.     As the Mayor for Cottonwood Heights, Kelvyn Cullimore is assigned to sit on Board of Unified Fire and at all relevant times herein was a member of the Unified Fire Board.

36.     As a member of the Unified Fire Board, Cullimore has direct access to and impact upon the employment of Plaintiff.

37.     Defendant Cottonwood Heights employs or employed Detective Woods at all relevant times and directed Detective Woods actions by and through his official conduct.

38.     As an employee hired for police functions Detective Woods is subject to the command structure for the police department which directs and instructs his activities. Detective Woods is responsible to investigate matters assigned to him and report on his findings.

39.     During all times mentioned in this complaint, the defendants and each of them, separately and in concert, engaged in acts and/of omissions, or have threatened to engage in acts and/or omissions, which constitute deprivations of the plaintiff's constitutional rights, and the privileges and immunities of the plaintiff, and while these are, or are threatened to be, carried out under color of law, they have no justification or excuse, and were instead gratuitous, illegal, improper and unrelated to any activity in which the defendants may appropriately and legally engage in the course of administering and maintaining the law enforcement operations of Cottonwood Heights or the State of Utah.

40.     The Defendants made use of the electronic data obtained by them in connection with employment decisions.

## BACKGROUND OF THIS ACTION AND THE DEFENDANTS' CREATION AND DISTRIBUTION OF THE UTAH PRESCRIPTION DRUG DATABASE

41.     In or about 1995 the Utah Department of Commerce ("UDC") began compiling statistical data and reports, in electronic form, which recorded the activities of all prescription drug information (the prescription drug database). Such data and reports were originally prepared, created and intended to be used, by medical personnel for the prevention and detection of illegal and or dangerous use of prescription medication.

42.     UDC is a person under the Fair Credit Reporting Act, 15 U.S.C. § 1681a (b) which includes governments, governmental units or agencies.

43.     By creating and maintaining the database, the UDC on a cooperative non-profit basis regularly engages in the practice of assembling information for the purpose of furnishing reports to third parties and uses means or facilities of interstate commerce for preparing or furnishing the reports to third parties. UDC meets the definition of a consumer reporting agency under the Fair Credit Reporting Act, 15 U.S.C. § 1681a (f).

44.     The data and reports prepared by UDC consist of any and all prescriptions for medication made by any medical care provider with the state of Utah and provided to any pharmacy or pharmacist for fulfillment of such prescription.

45.     The database meets the definition of a "consumer report" under the Fair Credit Reporting Act, 15 U.S.C. § 1681a (d) because it contains information about the personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing an individual's eligibility in connection with employment. It was foreseeable that the information from the UDC's database could be and would be used for this purpose.

46. Utah Code § 58-37f-301(k) allows access to database by Federal, State, and Local law enforcement agencies and there are no limits imposed on the purposes for which it may be used.

47. No rules, regulations or procedures have been promulgated, and no notice or opportunity is provided to patients to challenge the law enforcements investigation and invasion of privacy.

48. UDC provides access to law enforcement at their unfettered and unregulated discretion.  Once a person obtains a password all that person needs to gain access to the private information is access to the internet and a name.

49. This information is provided to any officer who asks any person for identification. There is no requirement that any law enforcement, or other party to whom they may freely and do share the information, demonstrate a permissible purpose to obtain the consumer report from UDC as required by the Fair Credit Reporting Act, §  1681b .

50. Such data and reports are provided by UDC to law enforcement without any significant regulation, oversight, certifications or written consent of the person whose information is being provided.  The statute only requires that the law enforcement agent be engaged as a "specific  duty of their employment in enforcing laws: **(i)** regulating controlled substances **(ii)** investigating insurance fraud, Medicaid fraud, or Medicare fraud; or**(iii)** providing information about a criminal defendant to defense counsel, upon request during the discovery process, for the purpose of establishing a defense in a criminal case.

51. There are no meaningful restrictions on the party receiving the information to prohibit the further dissemination of the information to other parties. Detective Woods

disseminated the information he obtained from the database about Pyle to Defendant Cottonwood Heights and Defendant Kelvyn Cullimore who oversees and impacts the employment position of plaintiff. This information was relied on in an attempt to terminate Pyle from his employment.

52. In practice, there is no oversight or regulation regarding this provision of the statute. Since the inception of the database there have been no independent investigations of individual officers and or agencies who are provided access.

53. The only investigations regarding the database since it was created in 1995 have come about as a report of illicit use of the database after it was abused and the rights of specific individuals were forsaken.

54. In the twenty years since the database was created by statute there have been fewer than ten investigations regarding the use of the statute by law enforcement.

55. Upon information and belief, the information from the database can and is used by persons such as Defendant Cottonwood Heights and Cullimore in evaluating employment.

## FACTS PERTAINING TO THE PLAINTIFF RYAN PYLE

56. The plaintiff Ryan Pyle ("the Plaintiff") is employed by Unified Fire and is a Fireman and has been for all times relevant to this matter.

57. Plaintiff was assigned to fire departments 101 and 107 for all times relevant to this matter.

58. On April 23, 2013 Detective James Woods of the Cottonwood Heights Police Department was contacted by the Chief of Police for Cottonwood Heights Robbie Russo and

informed that Unified Fire was reporting that medications were taken from ambulances at several fire departments in the Salt Lake Valley.

59. The medications that were missing from the fire departments were (1) Versed which is also known as Midazolam and is used to sedate a person who has experienced trauma or who is having minor surgery, (2) Morphine which is an opioid pain medication also referred to as a narcotic, and (3) Fentanyl which is an opioid pain medication used to treat "break through" cancer pain.

60. Chief Russo provided Detective Woods with a list of full time fire department employees of which Ryan Pyle was one of 480.

61. Chief Russo obtained this list of full time employees of Unified Fire Department from Cottonwood Heights Mayor Kelvyn Cullimore who sits on the Board for Unified Fire Department and served at this time as the Chairman of the Board. The list was provided by Mayor Kelvyn Cullimore to obtain information for employment purposes.

62. Detective Woods used this list to investigate each and every one of the 480 employees prescription drug history.

63. Prior to obtaining the list of employees Detective Woods did not specifically suspect Ryan Pyle or any other specific individual on the list of criminal activity.

64. Detective Woods used the list of names and the subsequent investigation of their prescription drug histories to "develop suspect leads of those who have the appearance of Opioid dependencies."

65.     Based upon his investigation and determination that Plaintiff was "Opioid dependent" Detective Woods included Plaintiff in a list of four "suspects" for a completely different crime than he was investigating when he received the list of names.

66.     Detective Woods then used the information that he obtained from the investigation of the prescription drug database and contacted Plaintiff's medical care providers multiple times.

67.     Detective Woods indicates that he was able to determine that Plaintiff used three separate doctors for medical treatment.

68.     Detective Woods was able to determine the treatment provided and formed the opinion based upon his investigation, that Plaintiff did not require the treatment provided by his three separate medical care providers.

69.     Detective Woods investigation into Plaintiff's medical history was not limited to his prescriptions for Opioids or other pain medications.

70.     Detective Woods reports all of the medications that Plaintiff was receiving from his various medical treatment providers.

71.     In an effort not to exacerbate the intrusion into Plaintiff's private information any further, counsel for Plaintiff elects not to list the various medications in this document.  At the appropriate time counsel will present this information.

72.     Suffice to say at this point that Plaintiff was not prescribed nor had he used any of the medications that were reported as missing.

73.     On April 25, 2013 Detective Woods met with Unified Fire Command Staff, Plaintiff's direct employer, to discuss the events of the theft and Plaintiff's employment situation.

Upon information and belief, Detective Woods shared information he had obtained from the database at the meeting regarding Plaintiff as well as all of the other 480 names on the list provided.

74. On May 9, 2013 Detective Woods at the direction of Chief Russo and ostensibly, Plaintiff's direct employer, once again used the information obtained from the investigation and met with Plaintiff's medical care providers.

75. At no time during this investigation was Plaintiff made aware of any investigation.

76. Prior to this instance Plaintiff had not provided permission for Detective Woods or Defendant Cottonwood Heights to review his medical information.

77. Detective Woods nor Cottonwood Heights sought the consent of Plaintiff to review his medical history.

78. Detective Woods did not seek a warrant to review Plaintiff's medical history.

79. Detective Woods did not have reasonable suspicion of any criminal activity committed by Plaintiff prior to accessing Plaintiff's private medical history.

80. The information provided to Detective Woods was provided to Cottonwood Heights and Mayor Kelvyn Cullimore and upon information and belief the information was considered in connection with the employment of Pyle.

81. None of the Defendants met the requirements of 15 U.S.C. § 1681b to obtain the medical information from the UDC database.

82. Using the information obtained as a result of the investigation into Plaintiff's medical history, Detective Woods screened charges against Plaintiff for violation of Utah Code § 58-37-8(3)(a)(ii) with Assistant District Attorney Ethan Rampton.

83. On June 17, 2013 Mr. Rampton indicated to Detective Woods that he declined to file charges against Plaintiff because he did not believe Mr. Pyle failed to disclose his use of prescription medications to his medical care providers.

84. At the direction of Chief Russo and Kelvyn Cullimore, Detective Woods pursued the exact same charges through the Attorney General's office.

85. On November 1, 2013 Plaintiff was charged with a violation of Utah Code § 58-37-8(3)(a)(ii) a third degree felony in case number 131910379.

86. As a result of the pending charges, Plaintiff's employment status was changed from Active Duty to Administrative Leave with pay.

87. On October 20, 2014 the case was dismissed with prejudice.

88. The Defendants acted negligently or willfully when they obtained the medical information without meeting the requirements of 15 U.S.C. § 1681b.

89. The plaintiff brings this action for injunctive and declaratory relief against law enforcement who seeks to review private and confidential medical histories pursuant to Utah Code § 58-37f-301 to secure privacy and protect employment rights for himself as well as other individuals similarly situated who have sought medical treatment and received prescription medications.

90. The plaintiff seeks an appropriate remedial order to ensure that the defendants discontinue their practice of investigating the prescription drug histories of any individual they deem necessary without first seeking permission, a warrant, or having reasonable suspicion that the subject of the investigation has committed a crime.

91.     Plaintiff also asserts a claim against Detective Woods, Kelyvn Cullimore, and Cottonwood Heights for willfully or negligently obtaining information about Pyle without a permissible purpose in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681n and 1681o.

**FIRST CAUSE OF ACTION**
42 U.S.C. § 1983 First, Fourth, Fifth
and Fourteenth Amendments
of the Constitution of the United States
and Article 1 §§ 1, 3, 7, 14,  of the Constitution of the
State of Utah

92.     The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the foregoing paragraphs of this complaint with the same force and effect as though fully set forth herein.

93.     The defendants' policies and practices, set forth above, with respect to the unregulated investigation of employees medical histories through the prescription drug database is a violation of Plaintiff's First Amendment Right to Freedom of Speech with his medical providers inasmuch as arbitrary searches of medical histories has a chilling effect on on a person's willingness to communicate with their doctor.

94.     The defendants' policies and practices, set forth above, with respect to the unregulated investigation of employees medical histories through the prescription drug database is a violation of Plaintiff's Fourth Amendment Rights inasmuch as the invasion of

privacy is specifically forbidden and only allowed if (1) defendant has reasonable suspicion of criminal activity or (2) the consent of the person being investigated or (3) a warrant issued by magistrate with the proper authority.

95.    The defendants' policies and practices, set forth above, with respect to the unregulated investigation of employees medical histories through the prescription drug database is a violation of Plaintiff's Fifth Amendment Right inasmuch as defendant is using private statements made to medical providers about and concerning himself as evidence against the Plaintiff without Plaintiff being made aware that such statements could be used against him at a later time.

96.    The defendants' policies and practices, set forth above, with respect to the unregulated investigation of employees medical histories through the prescription drug database is a violation of Plaintiff's Fourteenth Amendment Rights inasmuch as he is denied due process regarding his employment status and by following the requirements of the previously indicated Constitutional Rights.

97.    The defendants' policies and practices, set forth above, with respect to the unregulated investigation of employees medical histories through the prescription drug database is a violation of Plaintiff's State of Utah Constitution rights under Article 1 § 1 inasmuch as the investigation violates his rights to communicate freely to his medical provider without fear of reprisal by the government.

98.    The defendants' policies and practices, set forth above, with respect to the unregulated investigation of employees medical histories through the prescription drug database is a violation of Plaintiff's State of Utah Constitution rights under Article 1 § 3

inasmuch as those rights protected by the United States Constitution are further protected by the Utah State Constitution by the acknowledgement that the United States Federal Government is the Supreme Law of the State of Utah.

99.     The defendants' policies and practices, set forth above, with respect to the unregulated investigation of employees medical histories through the prescription drug database is a violation of Plaintiff's State of Utah Constitution rights under Article 1 § 7 inasmuch as defendant's interfered with Plaintiff's employment and privacy interests without any consideration for due process under either the State or Federal Constitution.

100.    The defendants' policies and practices, set forth above, with respect to the unregulated investigation of employees medical histories through the prescription drug database is a violation of Plaintiff's State of Utah Constitution rights under Article 1 § 14 inasmuch as the investigation conducted by defendant violated Plaintiff's protection against searches of his papers and effects without the consent of Plaintiff, a warrant, or reasonable suspicion of criminal activity by the Plaintiff.

101.    As a result, this policy and practice is ***ultra vires,*** and further denial of the plaintiff's due process rights under the Federal and Utah State constitutions.

102.    The plaintiff is entitled to a judgment, pursuant to 42 U.S.C. § 1983, declaring that the defendants' policy and practices, set forth above, with respect to the use of the Utah Prescription Drug Database by law enforcement without consent, a warrant, or reasonable suspicion violates, the plaintiff's constitutional rights as indicated herein.

103.    The plaintiff is entitled to a judgment permanently enjoining the defendants from accessing the Utah Prescription Drug Database without the consent of the party, a warrant, or reasonable suspicion of criminal activity.

## SECOND CAUSE OF ACTION
Fair Credit Reporting Act, 15 U.S.C. § 1981, et seq.

104.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the foregoing paragraphs of this complaint with the same force and effect as though fully set forth herein.

105.    The Defendants obtained Plaintiff's medical information from UDC.

106.    The UDC meets the definition of a consumer reporting agency in its operation of the prescription drug database.

107.    It is foreseeable that the information assembled and maintained by the UDC would be and is considered in connection with employment matters.

108.    Defendants did not meet the requirements of 15 U.S.C. § 1681b to be provided the Plaintiff's medical information.

109.    Defendants willfully sought and obtained the Plaintiff's medical information form the UDC database.

110.    Defendants negligently sought and obtained the Plaintiff's medical information from the UDC database.

111.    The Plaintiff has suffered actual damages as a result of the Defendants' action. The damages include but are not limited to emotional distress, embarrassment, anxiety, loss of income, lost opportunity, and other stress proximately caused by the Defendants' actions and inactions.

112.    The Defendants' actions and inactions warrant the imposition of punitive damages as allowed by the Fair Credit Reporting Act.

>   Wherefore, the Plaintiff prays for the following relief on this count of his complaint:

   a. An award of statutory and actual damages in an amount to be determined at trial;

   b. An award of punitive damages as allowed by the Fair Credit Reporting Act;

   c. An award of costs, including attorney fees;

   d. Such other and further relief that is just and proper.


Dated February 3, 2015



/s/ Tyler B. Ayres_____
Tyler Ayres
Attorney for Plaintiff Ryan Pyle