J. MICHAEL HANSEN (1339)
BRET W. RAWSON (11083)
NATE N. NELSON (13307)
JEREMY G. JONES (14689)
**NELSON JONES, PLLC**
8941 South 700 East, Suite 203
Sandy, Utah 84070
Telephone: (801) 981-8779
Facsimile: (801) 505-0360
Email: mike@nelsonjoneslegal.com
*Attorneys for Defendants*

DAVID C. RICHARDS (6023)
**CHRISTENSEN & JENSEN, P.C.**
257 East 200 South, Suite 1100
Salt Lake City, Utah  84111
Telephone:  (801) 323-5000
Facsimile:  (801) 355-3472
Email:  david.richards@chrisjen.com
*Attorney for Kelvyn Cullimore as a*
*Board Member of Unified Fire Authority*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RYAN PYLE, an individual<br><br>     Plaintiff,<br><br>v.<br><br>JAMES WOODS, an individual, KELVYN CULLIMORE, an individual, COTTONWOOD HEIGHTS, a governmental entity, and JOHN AND JANE DOES 1-10<br><br>     Defendants. | **DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM**<br><br><br>Case No. 2:15-CV-00143-TC<br><br>Judge Tena Campbell |

## INTRODUCTION

Defendants James Woods ("Detective Woods"), Kelvyn Cullimore ("Mayor Cullimore"), and Cottonwood Heights (collectively "Defendants"), by and through their undersigned counsel, respectfully submit Defendants' Motion to Dismiss and Supporting Memorandum.

Plaintiff's Complaint attempts to state causes of action against the Defendants arising under 42 U.S.C. § 1983 for alleged violations of the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution; Article I, §§ 1, 3, 7, and 14 of the Constitution of the State of Utah, and under the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681n and 1681o. The gravamen of Plaintiff's Complaint is that Detective Woods of the Cottonwood Heights Police Department gained access to the Controlled Substances Database (the "Database") maintained by the Utah Division of Occupational and Professional Licensing ("DOPL") pursuant to the provisions of Utah Code Ann. § 58-37f-201. It is undisputed that Detective Woods complied with the provisions of Utah Code Ann. § 58-37f-301 in gaining access to the Database.

The Court should dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted for the following reasons:

1.      Defendants did not violate Plaintiff's constitutional rights in accessing the Database.

2.      Defendants Detective Woods and Mayor Cullimore are entitled to qualified immunity insofar as it had not been clearly established by either the United States Supreme

Court or the Tenth Circuit Court of Appeals that a warrantless access to the Database by law enforcement personnel acting without probable cause was unconstitutional.

3.    Accessing the Database in the course of investigating potential illegal conduct by an employee is specifically excluded from the provisions of the Federal Fair Credit Reporting Act.

4.    Insofar as Plaintiff seeks an injunction enjoining law enforcement from accessing the Database without a warrant or reasonable suspicion, Plaintiff's Complaint has been rendered moot by the enactment by the 2015 Utah Legislature of S.B. 119 and its subsequent signing into law by Governor Herbert on March 30, 2015.

5.    The Court should exercise its discretion and dismiss without prejudice Plaintiff's pendant state law claims premised upon alleged violations of the Utah Constitution.

**STATEMENT OF UNDISPUTED FACTS**

The following undisputed facts are relevant in deciding this Motion to Dismiss:

### A.  Facts Pertaining to the Utah Controlled Substances Database Act

1.    In 1995 the Utah Legislature created the Controlled Substances Database (the "Database").[1]

2.    The Database is administered by DOPL.[2] The purpose of the Database is to contain certain data "regarding every prescription for a controlled substance dispensed in the state to any individual other than an inpatient in a licensed health care facility."[3]

---

[1] Complaint, ¶ 2. *See* Utah Code Ann. § 58-37f-101, *et. seq.*
[2] Utah Code Ann. § 58-37f-201(2).

3

3.     DOPL is to maintain the Database to facilitate the use of the Database for identification of, *inter alia*, "individuals receiving prescriptions for controlled substances from licensed practitioners, and who subsequently obtain dispensed controlled substances from a drug outlet in quantities or with a frequency inconsistent with generally recognized standards of dosage for that controlled substance. . . ."[4]

4.     The pharmacist in charge of the drug outlet where a controlled substance is dispensed is required to submit the following data to DOPL:

    (a) the name of the prescribing practitioner;

    (b) the date of the prescription;

    (c) the date the prescription was filled;

    (d) the name of the individual for whom the prescription was written;

    (e) positive identification of the individual receiving the prescription, including the type of identification and any identifying numbers on the identification;

    (f) the name of the controlled substance;

    (g) the quantity of the controlled substance prescribed;

    (h) the strength of the controlled substance;

    (i) the quantity of the controlled substance dispensed;

    (j) the dosage quantity and frequency as prescribed;

    (k) the name of the drug outlet dispensing the controlled substance;

---

[3] Utah Code Ann. § 58-37f-201(5).
[4] Utah Code Ann. § 58-37f-201(6)(c).

(l)  the name of the pharmacist dispensing the controlled substance; and

(m) other relevant information as required by division rule.[5]

5.    DOPL has made rules, pursuant to the Utah Administrative Rulemaking Act, to establish the electronic format in which the required information is to be submitted to DOPL.[6]

6.    DOPL maintains a record including the identification of each individual who requests or receives information from the Database, the information provided to each individual, and the date and time that the information is requested or provided.[7]

7.    By statute, DOPL allows a number of individuals access to the database.[8] Prior to the passage by the 2015 session of the Utah Legislature of S.B. 119,[9] "federal, state, and local law enforcement authorities, and state and local prosecutors, engaged as a specified duty of their employment in enforcing laws regulating controlled substances," had access to the Database.[10]

8.    Before accessing the Database, one who was authorized by statute to access the Database, such as Detective Woods, was required to take an online tutorial and an online test regarding the purpose of the Database, how to access and use the Database, the law relating to the use of the Database and the information submitted to, and obtained from the Database.[11]

9.    To access the Database, federal, state and local law enforcement authorities and state and local prosecutors had to provide a "valid case number of the investigation or

---

[5] Utah Code Ann. § 58-37f-203(2)(a) – (m).
[6] Utah Code Ann. § 58-37f-203(3)(a).
[7] Utah Code Ann. § 58-37f-203(3)(b).
[8] *See generally* Utah Code Ann. § 58-37f-301.
[9] Discussed at length below.
[10] Utah Code Ann. § 58-37f-301(2)(k)(i).
[11] Utah Code Ann. § 58-37f-402(1).

prosecution."[12]

10.    Any person who obtains or attempts to obtain information from the Database for a purpose other than those authorized by Utah statute or by rule "is guilty of a third degree felony."[13]

11.    As of April, 2013, neither the Utah Controlled Substances Database Act (the "Act"), nor rules promulgated by DOPL concerning access by law enforcement to the Database, required law enforcement officials accessing the Database to have obtained a warrant or to have a reasonable suspicion of illegal activity by a specific individual, to access the Database. All that was necessary was "a valid case number of the investigation or prosecution." [14]

12.    Utah was not alone in *not* requiring a search warrant, subpoena, court order, or other judicial process before gaining access to a state controlled prescription drug database. Of the 49 states that had prescription drug database programs as of December 5, 2013, 31 did not require a search warrant, subpoena, court order, or other judicial process before law enforcement could gain access to the database. The states not requiring judicial oversight before accessing the database included, in addition to Utah, Arizona, California, Florida, Illinois, Massachusetts, Texas, and Washington.[15]

### B. 2015 Amendments to the Utah Controlled Substances Database Act

13.    The 2015 Utah Legislature amended the Act. The amendments, set forth in

---

[12] Controlled Substance Database Act Rule R156-37f(4).

[13] Utah Code Ann. § 58-37f-601(2)(b).

[14] Controlled Substance Database Act Rule R156-37f(4).

[15] *See* National Alliance for Model State Drug Laws, *Law Enforcement Access to State PMP Data* attached hereto as Exhibit "A".

S.B. 119,[16] amended Utah Code Ann. § 58-37f-301 to provide:

> (2)     The division [DOPL] shall make information in the database and
> information obtained from other state or federal prescription monitoring
> programs by means of the database available only to the following
> individuals, in accordance with the requirements of this chapter and
> division rules:
>
> \*          \*          \*
>
> (k) pursuant to a valid search warrant, federal, state, and local law
> enforcement agencies and state and local prosecutors that are engaged in
> an investigation related to:
>> (i)       one or more controlled substances; and
>> (ii)      a specific person who is a subject of the investigation.

14.     S.B. 119 was signed into law by Governor Herbert on March 30, 2015.[17]

### C.  Allegations of Plaintiff's Complaint

For the purposes of this Motion to Dismiss only, Defendants accept as true the following

material allegations of Plaintiff's Complaint:

15.     Plaintiff Ryan Pyle ("Pyle") is employed by the Unified Fire Authority ("UFA")

and has, at all times relevant to this matter, been employed as a fireman.[18]

16.     At all times relevant to this action, Pyle was assigned to fire stations 101 and

107.[19]

17.     At all times relevant to this action, Mayor Cullimore has been the Mayor of

---

[16] Attached hereto as Exhibit "B".

[17] *See* Exhibit "C" attached hereto.

[18] Complaint at ¶ 56.

[19] Complaint at ¶ 57.

Cottonwood Heights.[20] As the Mayor of Cottonwood Heights, Mayor Cullimore is assigned to sit on the Board of the UFA, and was a member of the UFA Board at all times relevant hereto.[21]

18.     On April 23, 2013, Detective Woods of the Cottonwood Heights Police Department was contacted by the Chief of Police of the Cottonwood Heights Police Department, Robby Russo, and informed that UFA was reporting that medications were taken from ambulances at several fire stations in the Salt Lake Valley. The missing medications were Versed, Morphine (an opioid medication), and Fentanyl (an opioid medication).[22]

19.     Chief Russo provided Detective Woods with a list of full-time fire department employees of which Pyle was one of 480.[23] Detective Woods used the list of names and the subsequent investigation of their prescription drug histories to develop suspect leads of those who had the appearance of opioid dependencies.[24] Detective Woods used the list to investigate each of the 480 firefighters' prescription drug histories.[25]

20.     Plaintiff alleges that Chief Russo obtained the list of full-time fire department employees from Mayor Cullimore.[26]

21.     Prior to obtaining the list of UFA employees, Detective Woods did not

---

[20] Complaint at ¶ 33.
[21] Complaint at ¶ 35.
[22] Complaint at ¶ 59.
[23] Complaint at ¶ 60.
[24] Complaint at ¶ 64.
[25] Complaint at ¶ 62.
[26] Complaint at ¶ 61. While this is not true, Defendants are willing to accept this allegation as true for purposes of this Motion only.

specifically suspect Pyle or any other individual on the list of criminal activity.[27]

22.    Based upon his investigation and determination that Plaintiff was "opioid dependent," Detective Woods included Pyle in a list of four "suspects" for a different crime than he was investigating when he received the list of names.[28]

23.    Pyle was not prescribed, nor had he used, any of the medications that were reported as missing.[29]

24.    On April 25, 2013, Detective Woods met with UFA Command Staff, Pyle's employer, to discuss the events of the theft.[30]

25.    Detective Woods met with Pyle's medical providers.[31]

26.    On November 1, 2013, Pyle was charged with a violation of Utah Code Ann. § 58-37-8(3)(a)(ii),[32] a third degree felony.[33]

27.    As a result of the pending charges, Pyle's employment status was changed from Active Duty to Administrative Leave with pay.[34]

28.    On October 20, 2014, the criminal case was dismissed with prejudice.[35]

---

[27] Complaint at ¶ 63.

[28] Complaint at ¶ 65.

[29] Complaint at ¶ 72.

[30] Complaint at ¶ 73.

[31] Complaint at ¶ 74.

[32] "It is unlawful for any person knowingly and intentionally: . . . to obtain a prescription for . . . any controlled substance by misrepresentation. . . ."

[33] Complaint at ¶ 85.

[34] Complaint at ¶ 86.

[35] Complaint at ¶ 87.

**ARGUMENT**

In evaluating a motion to dismiss brought pursuant to Rule 12(b)(6), courts must accept the well-pleaded allegations of a plaintiff's complaint as true and view them in the light most favorable to the plaintiff. *Sutton v. Utah State School for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). To avoid dismissal for failure to state a claim upon which relief can be granted, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the Court must accept reasonable inferences derived from well-pleaded facts, it need not accept conclusions characterizing "unwarranted inferences drawn from the facts or footless conclusions of law predicated upon them." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990) (internal quotations omitted).

Viewed in the light most favorable to Pyle, the facts plead in the Complaint at bar wholly fail to state a claim under 42 U.S.C. § 1983 for a violation of Pyle's constitutional rights. Detective Wood's access to the Database was legal and fully authorized by Utah law in the Spring and Summer of 2013. The Defendants did not violate Pyle's federal constitutional rights and, assuming *arguendo*, that such rights were violated, such a violation was not clearly established in 2013. In addition, the federal Fair Credit Reporting Act has no applicability to the case at bar. Accordingly, the Court should dismiss Pyle's claims arising under federal law with prejudice and dismiss his pendant state law claims without prejudice. Moreover, insofar as Pyle

seeks injunctive relief regarding warrantless access by law enforcement to the Database, such a claim has been rendered moot by the passage and signing into law of S. B. 119.

## I.   DEFENDANTS DID NOT VIOLATE PYLE'S FEDERAL CONSTITUTIONAL RIGHTS.

### A. Defendants Did Not Violate Pyle's First Amendment Rights.

Paragraph 93 of the Complaint alleges:

> The defendants' policies and practices, set forth above, with respect to the unregulated investigation of employees [sic] medical histories *through the prescription drug database* is a violation of Plaintiff's First Amendment Right to Freedom of Speech with his medical providers inasmuch as arbitrary searches of medical histories has a chilling effect on . . . a person's willingness to communicate with their doctor.

(Emphasis added).

Pyle's allegation is without merit. No confidential communications between Pyle and his health care providers was revealed by access to the Database. To the contrary, the only information provided by access to the Database is the name of the prescribing practitioner, the date of the prescription, the date the prescription was filled, the name of the individual for whom the prescription was written, positive identification of the individual receiving the prescription, the name of the controlled substance, the quantity of the controlled substance prescribed, the strength of the controlled substance, the quantity of the controlled substance dispensed, the dosage quantity and frequency as prescribed, the name of the drug outlet dispensing the controlled substance, and the name of the pharmacist dispensing the controlled substance.[36] Defense counsel has been unable to find a *single* case that has held that the disclosure of this type

---

[36] Utah Code Ann. § 58-37f-203(2)(a)-(l).

of information to law enforcement violates the First Amendment.

The Court must dismiss Pyle's first cause of action to the extent that it purports to state a claim pursuant to 42 U.S.C. § 1983 based upon an alleged infringement of Pyle's First Amendment rights.

### B. Defendants Did Not Violate Pyle's Fourth or Fourteenth Amendment Rights.

The plain language of the Act, prior to the 2015 amendments, allowed law enforcement officers such as Detective Woods to access the Database without a warrant. Two of the primary purposes of the Act are to identify individuals who receive "controlled substances . . . and subsequently obtain dispensed controlled substances from a drug outlet in quantities or with a frequency inconsistent with generally recognized standards of dosage for that controlled substance," and to identify any individuals who "present[ ] forged or otherwise false or altered prescriptions for controlled substances to a pharmacy." Utah Code Ann. § 58-37f-201(6). The Act expressly allowed law enforcement officers to access the Database in connection with their "specified duty of their employment in enforcing laws . . . regulating controlled substances," *id.* § 58-37f-301(2)(k), but there was nothing in the Act that required a law enforcement officer to obtain a warrant as a prerequisite to accessing the Database.

In *Whalen v. Roe*, 429 U.S. 589 (1977), the constitutionality of the New York Prescription Monitoring Program was challenged by a group of physicians and patients. The New York statute required that all names and addresses of persons who received Schedule II

12

drugs be recorded in a central database.  *Id.* at 591.[37]  The patients alleged that the "mere

existence in readily available form about patients' use of Schedule II drugs creates a genuine

concern that that information will become publicly known and that it will adversely affect their

reputations."  *Id.* at 600.  Although the Court implicitly recognized a right to privacy in

prescription records, it found that:

> . . . neither the immediate nor the threatened impact of the patient-identification
> requirements of the New York State Controlled Substances Act of 1972 on either
> the reputation or independence of patients for whom Schedule II drugs are
> medically indicated is sufficient to constitute an invasion of any right or liberty
> protected by the Fourteenth Amendment.

*Id.* at 603-604.  Further, the Court found that "the legislature's enactment of the patient-

identification requirement was a reasonable exercise of New York's broad police powers."  *Id.* at

598.

Subsequent to *Whalen*, the courts have almost universally held that *warrantless* searches

by law enforcement of prescription drug databases do not violate either the Fourth or the

Fourteenth Amendment.  For example, the Supreme Court of Kentucky in *Williams v.*

*Commonwealth*, 213 S.W.2d 682 (Ky. 2007), found that a warrantless search by law enforcement

personnel of the Kentucky prescription drug database "does not constitute a 'search' under the

Fourth Amendment or [the Kentucky Constitution] since citizens have *no reasonable expectation*

*of privacy in this limited examination of and access to their prescription records.  Id.* at 682.

The court explained its decision by stating that:

---

[37] Unlike the Utah statutory scheme at issue in this case, the New York statute provided that the
records could be divulged "pursuant to judicial subpoena or court order in a criminal
investigation or proceeding." *Whalen* at 595.

> [A] KASPER [Kentucky All-Schedule Prescription Electronic Reporting System]
> report conveys only limited data to a restricted number of persons. First, it does
> not report the dispensation of all substances by practitioners or pharmacists but
> only those substances classified as "Schedules II, III, IV, and V controlled
> substances." Second, nothing in a KASPER report discloses a patient's condition,
> treatment, or communications with his or her physician, as the report merely
> conveys the patient's name, the drug dispensed, the date of dispensing, the
> quantity dispensed, the prescriber, and the dispenser. Finally, KASPER data is
> not available to the general public, but rather only to specified personnel who
> certify that they are conducting "a bona fide specific investigation involving a
> designated person."

*Id.* at 683 (citations omitted). In conclusion, the court stated that law enforcement access to

KASPER data and reports does not "infringe upon or otherwise manipulate any well-recognized

Fourth Amendment or [Kentucky constitution] freedoms." *Id.* at 683-84.

In *Douglas v. Dobbs*, 419 F.3d 1097 (10th Cir. 2005), the Tenth Circuit Court of

Appeals, while finding that patients have a right to privacy in their prescription records, stated

that the "right to privacy is not absolute . . . as it is 'well settled that the State has broad police

powers in regulating the administration of drugs by the health professions.' " *Id.* at 1102, n.3

(citing *Whalen* at 97, n. 30). Further, the right to privacy may be diminished by state law "which

in this case must be tempered by the fact that New Mexico apparently requires pharmacies to

make these records available to law enforcement." *Id.* at 1102 (citations omitted).

The Tenth Circuit did not reach the question of whether a warrant was necessary to

obtain the plaintiff's prescription records in *Douglas*; however, numerous other courts have. In

*Murphy v. State*, 62 P.3d 533 (Wash. App. Div. 1 2003), the Washington Court of Appeals found

that a warrantless search of prescription records from 39 pharmacies conducted without a

warrant was constitutional. The search of prescription records was conducted pursuant to a state

14

statute which required pharmacies to open such records to inspection by law enforcement.[38]  *Id.*
at 536-37.  The court held that a patient has the right to expect that his or her use of a particular
drug would not be disclosed arbitrarily or randomly, but a "reasonable patient buying narcotic
prescription drugs knows or should know that the State, which outlaws the distribution and use
of such drugs without a prescription, will keep careful watch over the flow of such drugs from
pharmacies to patients."  *Id.* at 541.  The court concluded that, given the history of government
scrutiny of such drugs in the state, patients who fill prescriptions for narcotic drugs "should
reasonably expect that their prescription records will be available to appropriate government
agents, subject to safeguards against unauthorized disclosure."  *Id.*

Similarly, in *State v. Wiedeman*, 835 N.W.2d 698 (Neb. 2013) the Supreme Court of
Nebraska held the defendant's Fourth Amendment rights were not violated by the State's
warrantless, investigative access to her prescription records.  Nebraska law required prescriptions
for all controlled substances to be kept in a separate file by dispensing practitioners and that such
file be "readily available to the department and law enforcement for inspection without a search
warrant."[39]  *Id.* at 707.  The court held that, given the long history of governmental scrutiny in
the area of narcotics and other controlled substances and the lack of a reasonable expectation of
privacy in personal information knowingly given to third parties, a patient who gives his or her
prescription to a pharmacy to fill it has "no legitimate expectation that governmental inquiries

---

[38] *See* Wash. Rev. Code § 18.64.245 (2003) ("The record of prescriptions shall be open for
inspection . . . by any officer of the law, who is authorized to enforce chapter 18.64, 69.41, or
69.50 RCW.").

[39] Neb. Rev. Stat. § 28-414(3)(a).

will not occur." *Id.* at 711-712.

In *State v. Russo*, 790 A.2d 1132, 1146 (Conn. 2002), *cert. denied* 537 U.S. 879 (2002), the Connecticut Supreme Court found that the state's regulatory scheme authorized law enforcement officials to obtain prescription records for controlled substances without a warrant.[40] The court held that this express authorization reflected a "considered public policy judgment that, in and of itself, serves to diminish a person's expectation of privacy in such records." *Id.* at 1152. The court further noted that a person's expectation of privacy in his prescription records is "reduced by virtue of the routing disclosure of that information" to regulatory officials, insurers, health care providers, and hospital personnel. *Id.* at n. 37 (citing *Whalen v. Roe*, 429 U.S. 589, 602 (1977)). The court ultimately concluded that a person "does not have an *objectively reasonable* expectation that records of his or her prescriptions for controlled substances will not be disclosed to law enforcement personnel, subject to safeguards against further dissemination of those records, upon an appropriate request for those records by such personnel." *Id.* at 1152 (emphasis in original). In conclusion, the court held that "[i]n light of the state's strong interest in regulating and policing the distribution of potentially harmful drugs . . . and in light of the restrictions that the statutory scheme places upon the disclosure of prescription information and records, the conclusion is inescapable that the defendant's privacy rights were not violated" when his prescription records were obtained without a warrant by law enforcement officers involved in a criminal investigation. *Id.* at 1155.

---

[40] *See* Conn. Gen. Stat. § 21a-265 (1987) ("Prescriptions, orders and records . . . shall be open for inspection only to federal, state, county and municipal officers, whose duty it is to enforce the laws of this state or of the United States relating to controlled substances.").

In *State v. Otterman*, 2002 Ohio 5772, ¶ 17, the Court of Appeals of Ohio found that disclosures of prescription records to police officers or officials of the State Pharmacy Board did not violate the defendant's Fourth Amendment right to be protected from *unreasonable* seizures because patients have no reasonable expectation of privacy in those records (quoting *Stone v. Stow*, 64 Ohio St. 3d 156, 166, 593 N.E.2d 294 (1992)). The Ohio court also noted that any privacy interest patients have in their prescription records is limited to the right not to have the information disclosed to the general public. *Id.* (quoting *Stone*, 64 Ohio St. 3d at 166).

Finally, in *State v. Tamulonis*, 39 So. 3d. 524 (Fla. App. 2 Dist. 2010), the Florida Court of Appeals held that the officer was authorized by statute to obtain the defendant's prescription records without a warrant and that the pharmacy's production of those records was not a violation of the defendant's constitutional right to privacy.[41] The *Tamulonis* court found that a privacy interest in prescription records is not absolute and " 'the fact that the legislature requires pharmacies to keep records available for review and copying should obviously reduce a person's expectation of privacy about prescriptions that are filled at pharmacies.' " *Id.* at 528 (quoting *State v. Bean*, 36 So. 3d 116 (Fla. App. 2 Dist. 2010)). The court also found that the statute was narrowly tailored to meet the state's compelling interest in regulating controlled substances because it only applied to controlled substance records, did not reveal information about a

---

[41] *See* Fla. Stat. §893.07 (2010) ("[R]ecords shall be kept and made available . . . for inspection and copying by law enforcement officers whose duty it is to enforce the laws of this state relating to controlled substances."); *see also* PRESCRIPTIONS – SALES – FINES AND PENALTIES, 2011 Fla. Sess. Law Serv. Ch. 2011-141 (C.S.C.S.H.B. 7095) (West) (amending Fla. Stat. § 893.07 to allow law enforcement officers to access these records without first obtaining a subpoena, court order, or search warrant).

patient's medical condition, and did not make the data available to the general public, but only to "'law officers whose duty it is to enforce the laws of this state relating to controlled substances.'" (quoting Fla. Stat. § 893.07(4) (1997).

The Utah statutory scheme, as it existed in 2013, allowed Detective Woods to conduct a review of the Database as a way to narrow the list of potential suspects in his investigation into the missing controlled substances at the UFA. The Act clearly gives notice that prescription records could be disclosed to law enforcement. There was therefore no objectively reasonable expectation of privacy in Pyle's pharmacy records and therefore Detective Woods' review of those records did not constitute an *unreasonable* search under the Fourth Amendment or a denial of due process under the Fourteenth Amendment.

### C. Defendants Did Not Violate Pyle's Fifth Amendment Rights.

Paragraph 95 of Pyle's Complaint alleges:

The defendants' policies and practices, set forth above, with respect to the unregulated investigation of employees medical histories *through the prescription drug database* is a violation of Plaintiff's Fifth Amendment Right inasmuch as defendant [sic] is using private statements made to medical providers about and concerning himself as evidence against the Plaintiff without Plaintiff being made aware that such statements could be used against him at a later time.

(Emphasis added).

As set forth above, the Database does not contain any private communications between Pyle and his health care providers. Rather, it contains only information pertaining to controlled substances prescribed to, and purchased by, Pyle. Accordingly, insofar as Pyle's First Cause of

Action is premised upon alleged violations of Pyle's Fifth Amendment Right against self-incrimination, it must be dismissed.

Detective Woods, Mayor Cullimore, and Cottonwood Heights violated none of Pyle's federal constitutional rights. Defendants are therefore entitled to summary judgment on Pyle's claims brought pursuant to 42 U.S.C § 1983 for alleged violations of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

## II.   DETECTIVE WOODS AND MAYOR CULLIMORE ARE ENTITLED TO QUALIFIED IMMUNITY.

Detective Woods and Mayor Cullimore raised qualified immunity as an affirmative defense to Pyle's § 1983 claim.[42] The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 267 (2004) (KENNEDY, J., dissenting) (quoting *Butz v. Economou*, 438 U.S. 478,

---

[42] Answer, Eighth Affirmative Defense.

507 (1978), for the proposition that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis deleted). The United States Supreme Court has made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that " 'insubstantial claims' against government officials [will] be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 636, 640, n. 2 (1987). Accordingly, the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 2227 (1991) (*per curiam*).

A government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every reasonable official would have understood that what he is doing violates that right." *Anderson*, 483 U.S. at 640. The Supreme Court does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *Ashcroft v. Al-Kidd*, ___ U.S. ___, 131 S.Ct. 2074, 2083 (2011); *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Klen v. City of Loveland, Colorado*, 661 F.3d 498, 511 (10th Cir. 2011) (quoting *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010)) (quotation omitted). *See also Medina v. City & County of*

*Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992) (same).  There are *no* decisions of either the United States Supreme Court or the Tenth Circuit Court of Appeals holding that warrantless access to a prescription drug database by law enforcement personnel is a violation of an individual's constitutional rights.  Moreover, with respect to the claims against Mayor Cullimore, there are *no* decisions of either the Supreme Court or the Tenth Circuit which stand for the proposition that providing a list of employee names to law enforcement involved in investigating a theft violates those employees' constitutional rights.

The United States Supreme Court has stated that where a police officer relies on a statute, such as the Utah Act, his or her reliance is reasonable unless the statute "is clearly unconstitutional." *Illinois v. Krull*, 480 U.S. 340, 349-50 (1987).  The Supreme Court explained that "[u]nless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law." *Id.*

Defendants' counsel is aware of only *one* court which has ruled that a statute similar to the Act is unconstitutional. *See Oregon Prescription Drug Monitoring Program v. U.S. Drug Enforcement Admin.*, 3:12-CV-02023-HA, 2014 WL 562938 (D. Or. Feb. 11, 2014).  In contrast, virtually all of the other courts that have considered the issue have held that similar statutory schemes do not violate the Fourth Amendment. *See Tucker v. City of Florence, Ala.*, 765 F. Supp. 2d 1320, 1337 (N.D. Ala. 2011); *State v. Russo*, 790 A.2d 1132, 1152 (Conn. 2002); *Jackson v. State*, 29A02-1308-CR-711, 2014 WL 840230 (Ind. Ct. App. Mar. 3, 2014); *Williams v. Commonwealth*, 213 S.W.2d 671, 682 (Ky. 2006); *State v. Wiedeman*, 835 N.W.2d 698, 712 (Neb. 2013); *State v. Otterman*, 2002-Ohio-5772, 2002 WL 31387056; *State v. Underwood*,

K2/98-0485A, 1999 WL 47159 (R.I. Super. Jan. 20, 1999). On the date that Detective Woods accessed the Database to search Pyle's records not only did the Utah Act expressly authorize his access to the Dabase, but *all* of the persuasive authority indicated that such a warrantless search would be constitutional.

Several states have incorporated a warrant or probable cause requirement as part of the statutory schemes governing their prescription databases.[43] While such a requirement might be advisable as a matter of public policy,[44] and while in 2015 the Utah Legislature subsequently adopted such a policy, the fact that other legislatures had such a requirement, and Utah now has it, has no bearing on the question of whether the Utah Act as it existed in 2013 violated the United States Constitution, nor would those facts have put Detective Woods and Mayor Cullimore on notice that the Utah Act was unconstitutional. At the time of the access, Detective Woods' actions were reasonable.

In light of the virtually unanimous case law indicating that the Utah Act as it existed in 2013 was constitutional, it cannot be seriously contended that it was clearly established in 2013 that Detective Wood's warrantless search of the Database, with the assistance of information allegedly provided by Mayor Cullimore, was in violation of Pyle's alleged First, Fourth, Fifth, and Fourteenth Amendment rights. Detective Woods and Mayor Cullimore are entitled to a dismissal of Pyle's § 1983 claim on the basis of qualified immunity.

---

[43] *See* Exhibit "A" hereto.

[44] *See State v. Russo*, 790 A.2d 1132, 1146 (Conn. 2002) ("[A]rguably, as a matter of public policy, . . . law enforcement officials should be required to obtain prior court approval or the prior consent of the person whose prescription records are sought before gaining access to those records. . . .").

**III.   PYLE HAS FAILED TO STATE A CLAIM FOR VIOLATION OF THE FEDERAL FAIR CREDIT REPORTING ACT.**

Asking this Court, like the crew of the Starship Enterprise, to "go where no man has gone before," Pyle alleges that in accessing the Database in the course of a criminal investigation, Detective Woods, Mayor Cullimore, and Cottonwood Heights violated the provisions of the federal Fair Credit Reporting Act, 15 U.S.C. § 1981, *et seq.* (the "Credit Reporting Act"). Research has revealed no cases holding that law enforcement access to a state prescription drug database and use of that information in a criminal investigation constitutes a violation of the Credit Reporting Act, even when, upon the filing of a criminal action arising out of that investigation, an employee subsequently suffers an adverse employment decision.

The dearth of case law on this point is explained by the fact that, assuming *arguendo*, the information contained in the Database could be considered a "consumer report" as defined by the Credit Reporting Act,[45] and assuming that DOPL is a "consumer credit reporting agency," the circumstances of this case are clearly excluded from the provisions of the Credit Reporting Act. 15 U.S.C. § 1681a(y) provides:

> **Exclusion of certain communications for employee investigations**
>
> **(1) Communications described in this subsection**
>
> A communication is described in this subsection if –

---

[45] 15 U.S.C. § 1681a(d)(1) defines a "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in established the consumer's eligibility for -- . . . (B) employment purposes . . . ."

**(A)** but for subsection (d)(2)(D) of this section, the communication would be a consumer report;[46]

**(B)** the communication is made to an employer in connection with an investigation of –

      (i)     suspected misconduct relating to employment; or

      (ii)    compliance with Federal, State, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer;

**(C)** the communication is not made for the purpose of investigating a consumer's credit worthiness, credit standing, or credit capacity; and

**(D)** the communication is not provided to any person except

      (i)     to the employer or agent of the employer;

      (ii)    to any Federal or State officer, agency, or department, or any officer, agency, or department of a unit of general local government;

      (iii)   to any self-regulatory organization with regulatory authority over the activities of the employer or employee;

      (iv)   as otherwise required by law; or

---

[46] 15 U.S.C. § 1681a(d)(2)(d) excludes from the definition of the term "consumer report" certain communications not relevant to this action.

        (v)     pursuant to section 1681f of this title.

The transmission of Database information to Detective Woods clearly falls within this exclusion to the Credit Reporting Act. It was a communication made to an employer, the UFA, in connection with an investigation of suspected misconduct relating to employment – the investigation of the theft of opioid medications from two fire stations. The communication was not made for the purpose of investigating Pyle's credit worthiness, credit standing, or credit capacity, and the communication was not provided to any persons except agents of the UFA and a law enforcement officer of Cottonwood Heights, Detective Woods. In addition, the disclosure was made in conformance with the Utah Act.

Accordingly, the communication of the Database information pertaining to Pyle and the other fire fighters is excluded from the provisions of the federal Fair Credit Reporting Act. The Defendants are entitled to a dismissal of Pyle's Second Cause of Action for alleged violations of the Fair Credit Reporting Act.

## IV. INSOFAR AS PYLE SEEKS INJUNCTIVE RELIEF, HIS CLAIM HAS BEEN RENDERED MOOT BY THE PASSAGE OF S.B. 119.

Pyle seeks a permanent injunction enjoining the Defendants from accessing the Database without the consent of the individual who is the subject of the request, a warrant, or reasonable suspicion of criminal activity.[47] This request has been rendered moot by the 2015 passage and signing into law of S.B. 119.

---

[47] See Complaint at ¶ 103.

S.B. 119 amended Utah Code Ann. § 58-37f-301 to provide that DOPL can only make the information available in the Database available to federal, state, and local law enforcement agencies engaged in an investigation pursuant to a valid search warrant regarding a specific person who is the subject of the investigation. Accordingly, upon the effective date of S.B. 119, there is no need for the injunctive relief sought by Pyle.

## V. THIS COURT SHOULD EXERCISE ITS DISCRETION AND DISMISS, WITHOUT PREJUDICE, THE PENDANT STATE LAW CLAIMS.

Upon the Court's dismissal of Pyle's § 1983 and federal Fair Credit Reporting Act claims, the Court should exercise its sound discretion and dismiss, without prejudice, Pyle's pendant state law claims alleging violations of Article 1, §§ 1, 3, 7, and 14 of the Constitution of the State of Utah. A "district court has discretion to try state claims in the absence of any triable federal claims; however, that discretion should be exercised in those cases in which, given the nature and the extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." *Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). The Tenth Circuit has clarified that "if federal claims are dismissed before trial, leaving issues of state law, the federal court should . . . generally decline to exercise pendant jurisdiction in such instances because 'notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.'" *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (citing *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)). These holdings are also supported by Supreme Court precedent. *See, e.g., Carnegie – Mellon Univ. v. Cohill*, 484 U.S. 343, 350 & n. 7 (1988) (explaining that in the "usual case" a district

26

court will or should dismiss state claims when "federal law claims have dropped out of the lawsuit in its early stages"); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

There is no compelling reason for the Court to exercise supplemental jurisdiction over Pyle's remaining state law claims. First, virtually no discovery has been undertaken and no trial date has been set, so the nature and extent of the judicial proceedings do not weigh in favor of exercising jurisdiction. Judicial economy does not weigh against dismissing these claims without prejudice, to be re-filed in the Utah state courts should Pyle desire to do so. Finally, the remaining state claims involve issues of state law that would best be decided by a state court. In view of important considerations of comity and federalism, the Court should decline to exercise supplemental jurisdiction over Pyle's remaining state law claims.

**CONCLUSION**

For the reasons set forth above, the Court should dismiss with prejudice Pyle's causes of action brought pursuant to 42 U.S.C. § 1983 for alleged violations of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq.* In addition, the Court should dismiss the § 1983 against Detective Woods and Mayor Culllimore on the grounds of qualified immunity. Moreover, the Court should dismiss Pyle's claim for injunctive relief because the need for such relief has been rendered moot by the passage of S.B. 119 by the 2015 Utah Legislature. Finally, the Court should dismiss without prejudice Pyle's pendant state law claims.

DATED this 20th day of May 2015.

**NELSON JONES, PLLC**

*/s/ J. Michael Hansen*
J. Michael Hansen
*Attorney for Defendants*

**CHRISTENSEN & JENSEN, P.C.**

*/s/ David C. Richards*
David C. Richards
*Attorney for Kelvyn Cullimore as a*
*Board Member of Unified Fire Authority*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of May, 2015, I caused a true and correct copy of the

foregoing **MOTION TO DISMISS AND SUPPORTING MEMORANDUM** to be served on

the following parties via e-filing:

> Tyler B. Ayres
> *Attorney for Plaintiff*
> 12339 South 800 East, Suite 101
> Draper, Utah 84020
> tyler@ayreslawfirm.com

*/s/ Sharon Hassan*
Sharon Hassan
